UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRACE THOMAS, )
JOYCELYN WILLIS, )
JACQUES WILLIS, and )
MARY SHEFTON )
 )
          Plaintiffs, ) COMPLAINT
 ) Civil Action No.
v. )
 ) **1:04CV00525**
FREEWAY FOODS, INC. and )
WAFFLE HOUSE, INC. )
 )
          Defendants. )
 )

## INTRODUCTION

1. This is a civil action arising from acts of racial discrimination at defendants' Waffle House restaurant in Salisbury, North Carolina. Defendants denied Plaintiffs the right to make and enforce contracts on the same basis as white citizens in violation of 42 U.S.C. 1981. Defendants also denied plaintiffs the full and equal enjoyment of the goods, services, and accommodations of the Waffle House restaurant on the basis of race in violation of 42 U.S.C. 2000a. Plaintiffs seek, *inter alia*, injunctive relief, compensatory and punitive damages, and attorneys' fees and other costs of the action. Plaintiffs request a trial by jury.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1331 (federal question jurisdiction) and 28 U.S.C. 1343(4) (jurisdiction over suits involving congressional acts protecting civil rights). Jurisdiction is also based on 42 U.S.C. 2000a-6.

3. Venue is proper in this Court, pursuant to 28 U.S.C. 1391(b), because a substantial part of the events or omissions giving rise to the allegations in this Complaint

occurred within this Judicial District, and defendant's reside within this Judicial District.

4. Pursuant to 42 U.S.C. 2000a-3(c), on April 23, 2004, plaintiffs provided notice of intent to file this lawsuit to the North Carolina Human Relations Commission. On May 3, 2004, plaintiffs also filed notice of intent to file this lawsuit to the North Carolina Department of Justice.

## PARTIES

### Plaintiffs

5. Plaintiff Grace Thomas is an African-American citizen of the United States and a resident of Fayetteville, Cumberland County, North Carolina. Ms. Thomas is 68 years old and is the mother of plaintiff Joycelyn Willis and the grandmother of plaintiff Jacques Willis. Ms. Thomas suffers from diabetes. One symptom of Ms. Thomas' disease is that, when she does not have enough to eat and her blood sugar becomes too low, she becomes weak and dizzy, and her breathing becomes labored.

6. Plaintiff Joycelyn Willis is an African-American citizen of the United States and a resident of Fayetteville, Cumberland County, North Carolina. Ms. Willis is 52 years old and is the mother of plaintiff Jacques Willis.

7. Plaintiff Jacques Willis is an African-American citizen of the United States and a resident of Fayetteville, Cumberland County, North Carolina. Mr. Willis is 20 years old.

8. Plaintiff Mary Shefton is an African-American citizen of the United States and a resident of Fayetteville, Cumberland County, North Carolina. Ms. Shefton is 71 years old and also suffers from diabetes.

2

## Defendants

9. Defendant Freeway Foods, Inc., is a North Carolina corporation with its principal place of business at 4533 W. Market Street, Greensboro, Guilford County, North Carolina.

10. Defendant Waffle House, Inc., is a Georgia Corporation with its principal place of business at 5986 Financial Drive, Norcross, Gwinnett County, Georgia. Defendant Waffle House conducts business throughout the United States, with approximately 1,400 restaurants and restaurant franchises in 26 states, including the Freeway Foods Waffle House which is the subject of this complaint.

## FACTS

11. On or about June 17, 2000, plaintiffs traveled from Fayetteville, North Carolina, to Salisbury, North Carolina, to attend a Jehovah's Witness assembly and convention.

12. On the morning of the assembly, plaintiffs entered the Waffle House restaurant at 936 Jake Alexander Boulevard in Salisbury, Rowan County, North Carolina ("Salisbury Waffle House"), with the intent to purchase breakfast.

13. Waffle House claims that "customers enjoy sit down tables service with the speed of delivery typically found at fast food establishments." It also describes its service as "fast friendly service."

14. When plaintiffs entered the Salisbury Waffle House, they stood in the entry way for approximately 15 minutes. No Waffle House employee greeted them.

15. After approximately 15 minutes of standing, plaintiffs seated themselves at an

3

empty table. They sat for approximately 45 minutes.

16. During the 45 minutes plaintiffs were seated, a white couple entered the restaurant and also seated themselves. A Waffle House employee promptly set the white couple's table and took the couple's orders.

17. During this 45 minutes, plaintiff Joycelyn Willis attempted to get a waitress's attention. The waitress pointed to a white customer and said, "she's next."

18. After waiting a total of approximately one hour, plaintiff Grace Thomas began to feel weak from diabetes.

19. After Ms. Thomas began feeling weak, Ms. Willis approached the counter and asked an employee directly for service. Ms. Willis explained that Ms. Thomas was diabetic and needed food. She asked the employees behind the counter for at least a glass of juice. No employee made any response. A waitress behind the counter poured a cup of coffee for a white customer. Ms. Willis asked this waitress if she, too, could have a cup of coffee. Rather than pour a cup of coffee for Ms. Willis as she had for the white customer, the waitress slammed an empty coffee cup down on the counter near Ms. Willis, along with the pot of coffee. The waitress then walked away without pouring any coffee.

20. After the waitress slammed down the coffee cup, Ms. Willis repeatedly asked to see a manager. At first, no employees responded. Eventually, one employee gave Ms. Willis a name and telephone number which purported to be of the manager. However, when Ms. Willis attempted to call this number multiple times in subsequent days, no one ever answered.

21. At all times while plaintiffs were in the restaurant, all the employees and other

4

customers were white.

22. On or about December 21, 2002, plaintiffs again traveled from Fayetteville, North Carolina, to Salisbury, North Carolina, to attend a Jehovah's Witness assembly and convention.

23. Plaintiffs returned to the Salisbury Waffle House because it was the only restaurant open for breakfast in the vicinity. Ms. Thomas was feeling ill from diabetes and needed food.

24. When plaintiffs entered the restaurant, no Waffle House employees acknowledged them. Ms. Thomas sat in a chair by the door. The other plaintiffs stood in the entryway waiting to be seated for approximately 45 minutes.

25. Also while plaintiffs were waiting in the entryway, Ms. Willis informed Waffle House employees that Ms. Thomas was diabetic and needed food. None of the employees acknowledged the plaintiffs.

26. After waiting in the entryway for 45 minutes, plaintiffs seated themselves at an empty table. Plaintiffs waited approximately 45 additional minutes at the table without being served. During this period, Ms. Thomas was becoming increasingly ill from diabetes. One white customer offered Ms. Thomas a bowl of grits, which she accepted, offering to pay for them. Plaintiff Jacques Willis began to complain to his mother, Joycelyn Willis, that they were never going to be served and that they should be more forceful in their demands. Ms. Willis told her son to be patient and polite.

27. While plaintiffs were waiting at the table, plaintiff Mary Shefton, believing they would never be served because of their race, left the restaurant and waited in the car.

5

28. After waiting at the table for 45 minutes, Ms. Willis went to the counter and informed a Waffle House employee that her mother, Ms. Thomas, was very ill and needed food. The employee made no response at first but eventually allowed Ms. Thomas to place a to-go order. Ms. Thomas ordered an egg sandwich. After paying for the sandwich, plaintiffs noticed a cook and other Waffle House employees looking at them and laughing. In the car, as plaintiffs were driving away from the restaurant, Ms. Thomas bit into the sandwich and discovered it was filled with jalapeno peppers and was inedible.

29. Plaintiffs traveled to the nearest restaurant about which they knew, McDonalds, about one-half hour out of their way.

30. During this December 2002 visit to the restaurant, all of the employees plaintiffs saw were white. Plaintiffs saw one other black customer, sitting in a group of several white customers.

31. On or about June 14, 2003, plaintiffs Grace Thomas, Joycelyn Willis, and Mary Shefton again traveled from Fayetteville, North Carolina, to Salisbury, North Carolina, for a Jehovah's Witness assembly and convention. Plaintiffs again stopped at the Waffle House restaurant in Salisbury because it was the only restaurant open for breakfast in the vicinity.

32. When plaintiffs entered the restaurant, none of the employees acknowledged them. After waiting to be served for approximately 15 minutes, plaintiffs seated themselves at an empty table.

33. After they sat down, plaintiffs continued to wait for service for approximately 45 minutes. Plaintiff Joycelyn Willis began to aggressively ask Waffle House employees for

6

service. However, no employee acknowledged plaintiffs in any way during this visit. Plaintiffs neither placed an order nor received any food during the June 2003 visit.

34. After leaving the restaurants, plaintiffs traveled again to McDonalds, approximately one-half hour out of their way.

35. During the June 2003 visit, all other customers and all employees that plaintiffs saw were white.

## CLAIMS

### Claim 1

### Freeway Foods, Inc.'s Violation of 42 U.S.C. 1981

36. Plaintiffs sought food and services from defendant Freeway Foods and were denied the provision food and services on the same basis as white customers.

37. Freeway Foods discriminated against plaintiffs in the provision of food and services because of plaintiffs' race.

38. At all times relevant to this action, the employees of Freeway Foods were acting within the scope of their employment and in their capacity as employees, agents, or representatives of Freeway Foods.

39. The discriminatory practices were carried out at the direction of and with the consent, encouragement, knowledge and ratification of Freeway Foods and under Freeway Foods' authority, control, and supervision.

40. Freeway Foods' actions were undertaken intentionally and purposefully, with racially discriminatory animus, for the purpose of denying plaintiffs equal treatment on the basis of race. Freeway Foods acted maliciously, in bad faith, and with intentional, callous,

7

willful, wanton, and reckless disregard for plaintiffs' federally-protected rights.

41. Freeway Foods treated similarly-situated white persons differently from plaintiffs.

42. Freeway Foods failed to conduct a full and adequate investigation or otherwise provide adequate redress for its refusal to provide service to plaintiffs.

43. Freeway Foods denied plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. 1981.

44. Freeway Foods deprived plaintiffs of equal enjoyment of the benefits, privileges, terms, and conditions of a contractual relationship in violation of 42 U.S.C. 1981(b).

45. As a proximate result of the actions of Freeway Foods, plaintiffs have suffered, continue to suffer, and will in the future suffer great and irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and mental anguish.

Claim 2

Waffle House's Violation of 42 U.S.C. 1981

46. At all times relevant to this action, defendant Freeway Foods acted as an actual and apparent agent of defendant Waffle House. Therefore, defendant Waffle House is liable for the injuries described in this complaint.

47. At all times relevant to this action, defendants were parties to a franchise agreement under which Waffle House exercised substantial and potential control over Freeway Foods. This control extended to, *inter alia*, personnel matters, including employee

8

training relating to policies and practices regarding discrimination and customer complaints.

48. Through its advertising, signs, slogans, uniforms, menus, and the physical design of its restaurants, defendant Waffle House represented defendant Freeway Foods and the Salisbury Waffle House as its agent.

49. Plaintiffs, who are familiar with Waffle House restaurants, their uniform quality of food, and other characteristics, were reasonably induced to eat at the Salisbury Waffle House after seeing the familiar yellow and black sign advertising the Waffle House name.

50. Waffle House's representation of Freeway Foods as its agent caused plaintiffs reasonably to believe that Freeway Foods and the Salisbury Waffle House had the authority to act on Waffle House's behalf. Nothing at the restaurant led plaintiffs to believe they were eating at a restaurant distinct and separate from the Waffle House.

51. Plaintiffs' reasonable reliance upon Waffle House's representation caused the plaintiffs the injuries described in this complaint.

52. Through its customer complaint telephone number and other means, Waffle House exercised the right and assumed the duty to obtain and handle customer complaints, including discrimination complaints, at both its corporate-owned and franchised stores.

53. Plaintiffs sought food and services from Waffle House and were denied the provision food and services on the same basis as white customers.

54. Waffle House discriminated against plaintiffs in the provision of food and services because of plaintiffs' race.

55. Waffle House's actions were undertaken intentionally and purposefully, with

9

racially discriminatory animus, for the purpose of denying plaintiffs equal treatment on the basis of race. Waffle House acted maliciously, in bad faith, and with intentional, callous, willful, wanton, and reckless disregard for plaintiffs' federally-protected rights.

56. Waffle House treated similarly-situated white persons differently from plaintiffs.

57. Waffle House failed to conduct a full and adequate investigation or otherwise provide adequate redress for its refusal to provide service to plaintiffs.

58. Waffle House denied plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. 1981.

59. Waffle House deprived plaintiffs of equal enjoyment of the benefits, privileges, terms, and conditions of a contractual relationship in violation of 42 U.S.C. 1981(b).

60. As a proximate result of the actions of Waffle House, plaintiffs have suffered, continue to suffer, and will in the future suffer great and irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and mental anguish.

61. Waffle House engages in a pattern or practice of discriminating against African-Americans in provision of food and services.

### Claim 3

### Freeway Foods' Violation of 42 U.S.C. 2000a

62. The Salisbury Waffle House is a "place of public accommodation" within the meaning of 42 U.S.C. 2000a.

63. The operations of the Salisbury Waffle House affect commerce within the

10

meaning of 42 U.S.C. 2000a. The Salisbury Waffle House serves or offers to serve interstate travelers, and a substantial portion of the food that it serves, or other products that it sells, has moved through interstate commerce.

64. Plaintiffs attempted to afford themselves of the full benefits and enjoyment of a public accommodation. But for Freeway Foods' discriminatory conduct, plaintiffs could, and would, visit the Salisbury Waffle House or other Waffle House restaurants in the future.

65. Freeway Foods has denied plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, on the basis of race, in violation of 42 U.S.C. 2000a.

### Claim 4

### Waffle House's Violation of 42 U.S.C. 2000a

66. Plaintiffs attempted to afford themselves of the full benefits and enjoyment of a public accommodation. But for Waffle House's discriminatory conduct, plaintiffs could, and would, visit the Salisbury Waffle House or other Waffle House restaurants in the future.

67. Waffle House has denied plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, on the basis of race, in violation of 42 U.S.C. 2000a.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that the Court grant them the following relief:

(a) enter a declaratory judgment finding that the actions of defendants as alleged in this complaint violated 42 U.S.C. 1981 and 42 U.S.C. 2000a;

(b) enter a permanent injunction barring defendants from continuing to engage in

11

illegally discriminatory conduct against plaintiffs and other African-Americans who visit a Waffle House restaurant in the future;

(c) enter a permanent injunction directing that defendants take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this complaint and to prevent such occurrences in the future;

(d) award compensatory damages in an amount that would fully compensate plaintiffs for their damages, including but not limited to, humiliation, embarrassment, emotional distress, and mental anguish, caused by defendants' violations of the law, as alleged in this complaint;

(e) award punitive damages to plaintiffs in an amount that would punish defendants for the intentional, malicious, callous, bad faith, willful, wanton, and reckless misconduct alleged in this complaint and that would effectively deter defendants from future discriminatory behavior;

(f) award plaintiffs their attorneys' fees and costs; and

(g) order all other relief deemed just and equitable by the Court.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable as of right.

This 9th day of June, 2004.

Respectfully submitted,

/s/ signature

Henderson Hill, NC Bar No. 18563
S. Luke Largess, NC Bar No. 17486
FERGUSON STEIN CHAMBERS
 ADKINS GRESHAM & SUMTER, P.A.
Suite 300 Park Plaza Building
741 Kenilworth Avenue (Zip: 28204)
P.O. Box 36486
Charlotte, North Carolina 28236-6486
Phone: (704) 375-8461
Facsimile: (704) 334-5654

Bruce J. Terris, D.C. Bar No. 47126
Lemuel B. Thomas
(Lemuel B. Thomas is admitted in Texas only and
is under the supervision of Bruce J. Terris)
TERRIS, PRAVLIK & MILLIAN, LLP
1121 12th Street, N.W.
Washington, D.C. 20005-4632

Susan E. Huhta, DC Bar No. 453478
WASHINGTON LAWYERS' COMMITTEE
 FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, N.W., Suite 400
Washington, DC 20036
Phone: (202) 319-1000
Facsimile: (202) 319-1010

*Counsel for Plaintiffs*

13