UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRACE THOMAS                          )
JOYCELYN WILLIS,                      )
JACQUES WILLIS, and                   )
MARY SHEFTON,                         )
                                      )        1:04CV00525
            Plaintiffs,               )
                                      )
      v.                              )
                                      )
FREEWAY FOODS, INC., and              )
WAFFLE HOUSE, INC.,                   )
                                      )
            Defendants.               )
_____)

MEMORANDUM OPINION

TILLEY, Chief Judge

      This suit arises from a dispute between Plaintiffs Grace Thomas, Joycelyn

Willis, Jacques Willis, and Mary Shefton and Defendants Freeway Foods, Inc. and

Waffle House, Inc. regarding Plaintiffs' allegations that they were discriminated

against because of their race in a Waffle House restaurant in Salisbury, North

Carolina.  This case is before the Court on Defendants' Motions for Summary

Judgment [Docs. # 40 & 42].  For the reasons set forth below, Defendants'

Motions for Summary Judgment will be GRANTED in part and DENIED in part.

I.

      The facts in the light most favorable to the Plaintiffs are as follows:

Plaintiffs reside in Fayetteville, North Carolina and are African-American.  On three

occasions – in December of 2000, December of 2002, and December of 2003 –

Plaintiffs traveled from Fayetteville, North Carolina, to Salisbury, North Carolina to attend a Jehovah's Witness assembly. On each of these trips, Plaintiffs stopped at the Waffle House restaurant located at 936 Jake Alexander Boulevard in Salisbury ("Salisbury restaurant") to eat breakfast on their way to the assembly.[1] This particular Salisbury Waffle House is owned and operated by Freeway Foods, Inc. Freeway Foods is a Waffle House franchisee that owns and operates restaurants in central North Carolina.[2] Plaintiffs claim that on each of these visits to the Freeway Foods Waffle House in Salisbury they were treated in a discriminatory manner because of their race.

Plaintiffs' first visit to the Salisbury restaurant was on December 30, 2000. The night before this visit, Plaintiffs noticed the restaurant by the familiar "Waffle House" sign as they drove by and decided to go there for breakfast the following morning. Although their hotel offered a continental breakfast, Plaintiffs decided upon the Waffle House because they liked the food they had received during previous meals at other Waffle House restaurants and they knew that Ms. Thomas, who had diabetes, could get her food cooked the way she needed. The only sign

---

[1] With the exception of Mr. Willis who was not present during the December 20, 2003 incident, all Plaintiffs were present on all three visits to the Salisbury restaurant.

[2] The Waffle House restaurant system consists of over 1,400 corporate-owned and franchise-owned restaurants throughout the United States. The Salisbury restaurant is not a corporate-owned restaurant, but rather is a Waffle House franchise, owned and operated entirely by Freeway Foods, Inc. under a franchise agreement.

2

that the Plaintiffs saw on the outside of the building was the "Waffle House" sign. Plaintiffs noticed no signs when they entered the restaurant indicating that the restaurant was operated by Freeway Foods and not Waffle House.

When Plaintiffs entered the restaurant on the morning of December 30, 2000, they were not greeted nor acknowledged by any restaurant employee. After standing for between 10 and 15 minutes,[3] Plaintiffs seated themselves at an empty table. Although Plaintiffs disagree about how long they waited at the table – Ms. Willis remembers waiting for 15 to 20 minutes; Mr. Willis estimates waiting at the table for about 45 minutes; Ms. Thomas claims they waited for about 30 minutes; and Ms. Shefton recalls the wait at the table to be 45 minutes – they all recall being ignored while white customers in the restaurant were served. Additionally, when Ms. Willis attempted to get the waitress' attention, the waitress pointed to a white customer and said "she's next." Ms. Willis then responded that, in fact, she was next and the white customer agreed. However, the waitress walked away without waiting on the Plaintiffs.

Ms. Thomas began to feel weak on account of her diabetic condition so Ms. Willis approached the counter, explained Ms. Thomas' condition, and asked for food. Ms. Willis states that no employee responded to her inquiry. When a

_____

[3] Ms. Willis remembers waiting for 15 minutes before seating themselves in a booth; Mr. Willis estimates between 10 and 15 minutes; Ms. Thomas says they waited for only a "few seconds" before seating themselves at a booth; and Ms. Shefton says they waited to be seated for about 15 minutes.

waitress behind the counter started to poor a cup of coffee for a white customer, Ms. Willis asked her if she could at least have a cup of coffee. However, she claims that the waitress responded by slamming an empty coffee cup and pot of coffee down on the counter near her and walking away without pouring any coffee. Ms. Willis then asked to see a manager. Although initially ignored, one employee eventually gave Ms. Willis a name and telephone number on a post-it note. Plaintiffs left the restaurant without being served. Ms. Willis states that she attempted repeatedly to call the number on the post-it, but that no one ever answered.

Two years later, on December 21, 2002, Plaintiffs again traveled to Salisbury to attend a Jehovah's Witness assembly and convention. Plaintiffs returned to the same Salisbury Waffle House that morning to get breakfast. When they entered the restaurant, again, no employee acknowledged them as they stood near the door waiting to be seated. As they waited, Ms. Willis informed employees at the restaurant that Ms. Thomas was diabetic and needed food. After waiting for 15 minutes, Ms. Willis seated herself at an empty table where she waited for an additional 15-20 minutes without being served. The other Plaintiffs waited elsewhere. While Ms. Willis was waiting, other customers came into the restaurant, were acknowledged, and served. The Plaintiffs remember one other African-American man in the restaurant at this time. He had come in and sat with a group of several white men. Plaintiffs deny seeing any other African-American

4

customers in the restaurant other than this man.

Ms. Thomas was then offered a bowl of grits from another customer, which she accepted. After waiting approximately 30 minutes, Mr. Willis and Ms. Shefton left the restaurant and waited in the car. After waiting an addition 15-20 minutes in the restaurant, Ms. Willis went to the counter and told an employee that her mother, Ms. Thomas, was very ill and needed food. The employee allowed Ms. Thomas to place a to-go order of an egg sandwich. Ms. Willis and Ms. Thomas then left the Waffle House with the sandwich. Ms. Thomas claims that she later bit into the sandwich and discovered that it was inedible because it was filled with Jalapeno peppers rather than eggs.

Plaintiffs' final visit to the Salisbury restaurant was on December 20, 2003. On that date, Ms. Thomas, Ms. Willis and Ms. Shefton had again made the trip from Fayetteville to Salisbury to attend the Jehovah's Witness assembly. The Plaintiffs stopped at the same Salisbury restaurant to get breakfast before the assembly. Plaintiffs were again ignored by the Waffle House employees when they entered the restaurant. After waiting by the door, the Plaintiffs seated themselves at an empty table. Plaintiffs continued to wait for service for approximately 15 minutes.[4] Plaintiffs asked for service during this time, but no employees acknowledged them although other white customers were being waited on and served around them. During this third visit on December 20, 2003, Plaintiffs did

---

[4] Ms. Shefton, however, again left the restaurant and waited in the car.

not place an order and left the Salisbury restaurant without receiving anything to eat or drink.

Plaintiffs claim that during all three of their visits to the Salisbury Waffle House, with the exception of the one black male described above, all of the customers of the restaurant were white and all of the employees they saw were white. Additionally, Plaintiffs admit that they never lodged a complaint against Waffle House, but also assert that they never saw comment cards, signs with customer service numbers, or any other instructions regarding making a complaint.

On June 10, 2004, Plaintiffs filed the current action against defendants Freeway Foods, Inc. and Waffle House, Inc. [Doc. # 1]. On May 3, 2005, Plaintiffs filed an Amended Complaint [Doc. #18]. Plaintiffs seek damages, both compensatory and punitive; injunctive relief; and attorneys' fees and other costs, under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a. Defendants moved for summary judgment on August 1, 2005.[5] Plaintiffs filed their response to both motions on September 6, 2005 [Docs. # 71& 72]. Defendants' reply briefs were filed on September 23, 2005 [Docs. # 83 & 84].

II.

Summary judgment is generally appropriate only when there is no genuine

---

[5] Freeway Foods' Motion for Summary Judgment [Doc.# 40] and accompanying brief [Doc. # 41], and Waffle House's Motion for Summary Judgment [Doc.#42] and accompanying brief [Doc. #43] were all filed on August 1, 2005.

6

issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those facts identified by the controlling law as essential elements of the claims asserted by the parties. Thus, the materiality of a fact depends on whether the existence of that fact could cause a jury to reach a different outcome. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). A genuine issue of material fact exists where there is evidence, viewed in the light most favorable to the non-moving party, such that a reasonable jury could find in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87, 106 S.Ct. 1348 (1986). There is no genuine issue of material fact if the nonmoving party fails to make a showing on an essential element of its case such that a reasonable jury could find in its favor. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986).

Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson, 477 U.S. at 249. The party opposing the motion may not rest upon its pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. Anderson, 477 U.S. at 248. Unsupported allegations and speculations are not sufficient to defeat a summary judgment motion. Felty v. Graves-Humphreys, Co., 818 F.2d 1126, 1128 (4th Cir. 1987);

7

see also Celotex, 477 U.S. at 323-24 ("One of the primary purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## III.

Waffle House asserts that because it does not own or operate the Salisbury restaurant, it is not vicariously liable for the alleged actions of Freeway Foods' employees. Plaintiffs respond with two alternate theories: an actual agency relationship existed between Waffle House and Freeway Foods or, in the alternative, an apparent agency relationship existed between Waffle House and Freeway Foods.

### A.

Plaintiffs' first assertion – that Freeway Foods is an actual agent of Waffle House – is unsupported. "A franchisor is vicariously liable for the tortious acts of its franchisee when an agency relationship exists and the acts are committed within the scope of the agent's authority." See Miller v. Piedmont Steam Co., 528 S.E.2d 923, 926 (N.C. Ct. App. 2000). Under North Carolina law,[6] the existence

---

[6] Waffle House asserts that the determination of whether an agency relationship exists should be governed by Georgia's law of agency. Although the franchise agreement designates Georgia law as the law governing disputes between the parties to that agreement, this is not such a dispute, thus that choice of law provision is not applicable. See e.g., Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 166-67 (4th Cir. 1988) (applying North Carolina law to determine whether actual or apparent agency exists); Wilkins v. Denamerica Corp., 2001 WL 1019698, at *2 (W.D.N.C. May 5, 2001) (relying on federal cases and North Carolina state law to determine that no agency relationship exists between

of an actual agency relationship "depends on the degree of control retained by the principal over the details of the work as it is being performed." Vaughn v. N.C. Dept. of Human Res., 296 N.C. 683, 686 (1979). Additionally, the controlling principle in the determination of an actual agency relationship is the extent of "control and supervision" of the franchisor over the franchisee's day-to-day operations. Hayman v. Ramada Inn, Inc., 357 S.E.2d 394, 397 (N.C. Ct. App. 1987). Here, Plaintiffs have not produced evidence sufficient to support a finding of actual agency.

The undisputed evidence is that Waffle House exercised no control in the hiring, firing, training, or supervision of Freeway Foods employees -- factors normally considered determinative in establishing agency. See e.g., Miller, 528 S.E.2d at 927 (finding no agency when franchisor retained no control of the hiring, firing or the supervision of franchisee's personnel). Plaintiffs' suggestion that the visits and inspections by Mr. Gholamhosseini ("Mr. Hosseini"), the Waffle House franchise liaison, are evidence of an agency relationship is misplaced. First, it is well-established that inspections to determine compliance with customer service and trademarks do not establish an agency relationship. See e.g., id. at 926-27 (holding that periodic inspections of business and its records and detailed standards prescribed in the franchise agreement, such as the length and hair color of employees, does not evidence control sufficient to establish a principal-agent

_____

franchisor and franchisee).

9

relationship); Hayman, 357 S.E.2d at 397 ("[A]lthough defendant retained the right to conduct regular inspections of the accommodations to insure compliance with the contract and rules of operations, defendant's actual control is limited to a right to terminate the franchise agreement and to collect damages for any noncompliance. . . ."). The acceptance of Mr. Hosseini's recommendations by Freeway Foods is not sufficient to establish agency. See Miller, 2001 WL 1019698, at *2 ("Nor does [franchisee's] voluntary adoption of the standards of service and responsibility for anti-discrimination training of [franchisor] create an agency relationship.").

Additionally, the denial of an agency relationship in a franchise agreement, while not determinative, is a factor to be considered. Cf. Crinkley v. Holiday Inns., Inc., 844 F.2d 156, 167 (4th Cir. 1988) ("[T]he denial of an agency relationship in a franchise agreement is *not alone* determinative of liability.") (emphasis added). Here, the Franchise Agreement expressly states that no agency relationship exists between Freeway Foods and Waffle House:

> [T]he parties expressly acknowledge that the relationship between them is that of independent contractors, and not partners, joint venturers or principal-agent, and neither party is authorized to obligate or bind the other in any way, except as expressly authorized in This Agreement. (Franchise Agreement ¶ 27.)

B.

Citing Georgia caselaw, Waffle House also contends that it can not be held vicariously liable for the actions of Freeway Foods' employees under a theory of

"apparent agency." In addition, Waffle House contends there can be no finding of apparent agency because Freeway Foods placed signs in the Salisbury restaurant announcing that it was the operator and franchisee.

While several Georgia cases have found no apparent agency upon facts similar to those presented here, this case is controlled by North Carolina law which has been applied differently.[7]

The principle of apparent agency, as recognized by courts applying North Carolina law, provides that "agency itself may be imposed by law on legal relations. . .[t]hough no actual agency exists," when a party "has been held out by the other to be [the agent] in a way that reasonably induces reliance on the appearances." Crinkley, 844 F.2d at 166 (citing Fike v. Board of Trustees, 53 N.C. App. 78 (1981)). To establish liability based on apparent agency, "a plaintiff must show that (1) the alleged principal has represented or permitted it to be represented that the party dealing directly with the plaintiff is its agent, and (2) the plaintiff, in reliance on such representations, has dealt with the supposed agent." Crinkley, 844 F.2d at 166 (citing Restatement (Second) of Agency § 267 (1958)). Plaintiffs have provided sufficient evidence to support submission on the theory of apparent agency to the jury.

---

[7] Defendant Waffle House alludes to a federal common law of apparent agency buts cites no authority adopting a federal rule for § 1981 cases. Nor does Waffle House make an argument why there should be a federally adopted rule for § 1981 cases. Each case cited by Waffle House applies the law of the state in which the trial court was sitting. (Def.'s Reply 5 n.7.)

Plaintiffs point out that, with the exception of the signs, Freeway Foods'
Salisbury Waffle House represents itself to the public in exactly the same way as
Waffle House owned and operated restaurants.  In <u>Crinkley v. Holiday Inns, Inc.</u>,
the Fourth Circuit examined a franchisor-franchisee relationship and concluded that
because: (1)  the franchise, Holiday Inn-Concord, used the Holiday Inns trade name
and trademarks, (2) franchisor, Holiday Inns, engaged in a national advertising
without distinguishing between company owned and franchised properties, and (3)
franchisor, Holiday Inns, published a national directory listing the properties within
its system without distinguishing between company owned and franchised
properties, the Plaintiffs had produced sufficient evidence to support submission of
the theory of apparent agency to a jury.  884 F.2d at 166-167.  Plaintiffs, here,
point out that the Waffle House name and mark appear throughout the Freeway
Foods' restaurant, from the exterior signs to the menu, the employees' uniforms
and name tags, and multiple interior signs.  Additionally, Plaintiffs point to the
Waffle House website, www.wafflehouse.com, which provides a store directory of
all Waffle House restaurants that does not distinguish between Waffle House
owned restaurants and those that are franchised.

Finally, as in <u>Crinkley</u>, Plaintiffs argue that the only indication that the
Salisbury Waffle House was not owned and operated by Waffle House, Inc. were
small signs stating that the restaurant is "owned and operated by Freeway Foods."
<u>See</u> <u>id.</u> ("The only indication that the Holiday Inn-Concord was not owned by

12

Holiday Inns was a sign in the restaurant that stated that the motel was operated by [franchisee] under a franchise agreement.").

While each party argues about the significance of the signs, there has not been sufficient evidence presented at this stage of the proceeding to support a ruling as a matter of law. There are still open questions about the size and placement of the signs in relation to customers and whether most customers would likely have seen them and, thereby, have understood that the restaurant was neither owned nor being operated by Waffle House.

Plaintiffs have also provided sufficient evidence to satisfy the reliance prong of the apparent agency test. Plaintiffs explained that they chose to go to the Salisbury Waffle House because they saw the sign the night before and recognized it as a restaurant chain where they had eaten at before and enjoyed the food. Additionally, Ms. Thomas testified that because of her health requirements, she chose to go to Waffle House because she "could get food cooked the way she needed." (Thomas Dep. 22, 31; Ms. Willis Dep. 51, 56.) Finally, Ms. Willis, Mr. Willis and Ms. Thomas all stated that if they had known that the Waffle House was owned and operated by another party they would not have decided to eat there. Thus, Plaintiffs' reliance on their previous experiences with Waffle House restaurants played a large role in their decision to eat at the Salisbury restaurant. Compare Crinkley, 844 F.2d at 167 (holding that plaintiffs' testimony that because of their previous stays at Holiday Inns, they use d the Holiday Inn directory to find

13

another hotel when the Holiday Inn near their destination was full, raised sufficient, although marginal, evidence of actual reliance to suffice to raise a jury issue); with Hayman, 357 S.E.2d at 398 (rejecting apparent agency claim when motel guest was required by her employer to stay at the franchised motel because necessity, not reliance on franchisor's representations dictated Plaintiff's choice); Case v. Holiday Inns, Inc., 1988 WL 70401, at *2 (4th Cir. July 5, 1988) (holding plaintiff failed to satisfy the reliance prong because the airlines, not plaintiff, made decision of where plaintiff would stay). Because Plaintiffs have put forth sufficient evidence to create an issue of material fact of whether an apparent agency relationship existed between Waffle House and Freeway Foods, summary judgment is denied on this issue.

IV.

Freeway Foods' argument − that it is not liable for the actions of its employee under agency principles − is also rejected. It is well settled that an employer can be held liable for the behavior of its employees if the behavior is within the course and scope of the employee's employment. See Slocumb v. Waffle House, 365 F. Supp. 2d 1332, 1341 (N.D. Ga. 2005) (citing Restatement (Second) of Agency § 219 (1) (2004); Arguello v. Conoco, 207 F.3d 803, 810 (5th Cir. 2000). Plaintiffs have presented evidence sufficient to create an issue of material fact regarding whether the employees at the Salisbury restaurant were acting within the scope of their employment. In Slocumb, the court denied

14

summary judgment when the employees were "working as servers at the time of the incident, the alleged misconduct involved their function as servers, and they were authorized by [defendant] to interact with patrons."  365 F. Supp. 2d at 1341; see also Eddy v. Waffle House, 335 F. Supp. 2d 693, 701 (D.S.C. 2004) (rejecting restaurant's argument that it was not liable for its employee's racially discriminatory remarks because employees were only working in a service capacity at the time);  accord  Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1246-47 (11th Cir. 2001) (applying Georgia law and holding that a reasonable jury could conclude that a cook was acting within the scope of his employment because he was cooking when he used the allegedly offensive language).  Thus, sufficient evidence has been put forth to create a material issue regarding whether Freeway Foods is vicariously liable for its employees' treatment of Plaintiffs.

## V.

Defendants claim that the first incident, which took place on December 30, 2000, is barred by the applicable statutes of limitations: specifically that it is beyond the three-year statute of limitations borrowed from North Carolina for § 1981 cases.[8]  Plaintiffs, however, claim that under 28 U.S.C. § 1658 the statute of limitations applicable to their case is four years.

---

[8] Since it is undisputed that the incidents in December of 2002 and December of 2003 are within the shorter statute of limitations of three years, only the timeliness of claims arising from the December 30, 2000 incident will be discussed.

In 1987, the Supreme Court held that "[b]ecause § 1981 does not contain a statute of limitations, federal courts should select the most appropriate or analogous state statute of limitations." Goodman v. Lukens Steel Co., 482 U.S. 656, 660, 107 S.Ct. 2617 (1987). Because racial discrimination is an injury to the individual rights of a person, the state statute applicable to personal injury claims is generally borrowed for § 1981 claims. Id. at 661. The statute of limitations for personal injury claims in North Carolina is three years. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 n.4 (4th Cir. 2000).

However, in 1990, Congress enacted § 1658, which provides, "except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than four years after the cause of action accrues." 28 U.S.C. § 1658. Although § 1981 was originally enacted over one hundred years ago, it was amended by the Civil Rights Act of 1991. The 1991 Act redesignated the original text of § 1981 into subsection (a), and added subsections (b) and (c). James v. Circuit City Stores, Inc., 370 F.3d 417, 420 (4th Cir. 2004). In Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836 (2004), the Supreme Court addressed whether § 1658 applies to § 1981 claims and held "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment" it is governed by § 1658's four-year statute of limitations. Id. at 382. In James v. Circuit City Stores, Inc. 370 F.3d at 421, the Fourth Circuit followed the Jones

holding and applied a four-year statute of limitations because the claims were for violations of § 1981 (b) which arose under the amendment to § 1981 contained in the 1991 Act.  See also Thompson v.Kyle, 2005 WL 2128581, at *4 (D.Neb. Aug. 29, 2005) (applying four-year statute of limitations because complaint alleges facts that could entitle the Plaintiffs to relief under the amended version of § 1981).

Here, Plaintiffs claim more than just the refusal of service or "the right to make . . . contracts" for food as was provided for prior to the 1991 Act.[9]  Rather, Plaintiffs' claims from the December 30, 2000 visit are that they were made to wait an excessive amount of time to be seated and waited on, that the waitress slammed a cup and pot of coffee on the counter, and they experienced general hostility by the employees at the Salisbury Waffle House during their visit.  This involves more than just the right to enter into a contract, but also includes, "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship" which is actionable only under § 1981 (b).  42 U.S.C.A. § 1981 (b); see also Wilkins v. Denamerica, 2001 WL 1019698, at *8-9 (W.D.N.C. May 5, 2001) (holding that plaintiffs stated a claim under § 1981 (b) when they ordered food but it was not delivered in a reasonable time).  Because Plaintiffs' claims are

_____

[9] Section 1981(a) is identical to the pre-1991 Amendment language and reads: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind and to no other." 42 U.S.C.A. § 1981 (a).

17

for much more than just the denial of service they "arise under" §1981 (b) and the four-year statute of limitations found in § 1658 applies.  See James, 370 F.3d at 421.  Because the complaint was filed within four years of the December 30, 2000 incident, Plaintiffs claims are not time barred.

VI.

Defendants also argue that the Plaintiffs' claims are barred by the equitable doctrine of laches.  Laches is an affirmative defense to a suit at equity that provides:  "Where a plaintiff unreasonably has slumbered on legal rights of which he was aware, and where the plaintiff's delay has prejudiced the defendant, the defendant may raise the defense that the plaintiff is in laches and should therefore be estopped from recovering on the merits."  Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 798 (4th Cir. 2001) (explaining that laches may bar a suit in equity that has been brought so long after the cause of action accrued that the court finds that the bringing of the action is unreasonable and unjust).  To establish laches, the proponent of its application must show: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."  Crutchfield v. U.S. Army Corps. of Engineers, 192 F. Supp. 2d 444, 465 (E.D. Va. 2001) (citing White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990).  The decision whether to invoke the doctrine is within the sound discretion of the trial judge and "depends on the particular circumstances of the case."  Id.; White, 909 F.2d at 102.

18

However, in <u>Lyons Partnership, L.P. v. Morris Costumes, Inc.</u>, the Fourth Circuit Court of Appeals held that "when considering the timeliness of a cause of action brought pursuant to a statute for which Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute." 243 F.3d at 798; <u>see also</u> <u>McDaniel v. United States</u>, 40 Fed.Appx. 790, 792 (4th Cir. 2002) (noting that separation of powers concerns prevent a court from applying a judicially-created doctrine to overrule a congressionally-created time limit). Additionally, this "principle is equally relevant when Congress creates a cause of action for traditional equitable remedies, such as injunctions, and specifies a statute of limitations for that action." <u>Lyons Partnership</u>, 243 F.3d at 798. Here, Congress specified a statute of limitations for Plaintiff's claims in 28 U.S.C.A. § 1658.[10] Because Plaintiffs' complaint was filed within that limitation of four-years, their claim is not barred by the doctrine of laches.

VII.

Section § 1981 guarantees "all persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981 (a). Additionally, § 1981 (b) defines "make

---

[10] The Fourth Circuit has found no distinction between specific statutes of limitations and "catch-all" statutes of limitations, as is at issue in this case, when determining whether plaintiffs are in laches. <u>See</u> <u>McDaniel</u>, 40 Fed. Appx. at 792 (rejecting defendant's claim that laches can be applied because the relevant statute of limitations is a general or "catch-all" statute of limitations).

19

and enforce contracts" to include "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981 (b). Plaintiffs claim they have been denied the right to contract for food and services because of their race, implicating § 1981.

When a party alleges a violation of § 1981, but does not offer direct evidence of intentional discrimination, the plaintiff may proceed using circumstantial evidence under the burden-shifting proof scheme established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973); Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004). Because the parties agree that Plaintiffs have not put forth direct evidence of discrimination, the McDonnell Douglas framework is the appropriate analysis for Plaintiffs discrimination claims.

Under the McDonnell Douglas framework, a plaintiff must first prove a *prima facie* case of race discrimination. Williams, 372 F.3d at 667. To establish a *prima facie* case of discrimination, plaintiffs must show: (1) they are a member of a protected class; (2) they sought to enter into a contractual relationship with defendant; (3) they met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) they were denied the opportunity to contract for goods

20

or services that were otherwise afforded to white customers.[11] Id. at 667-68. If

the plaintiff meets this initial burden, a presumption of discrimination arises, and

the burden shifts to the defendant to put forth admissible evidence of a "legitimate,

nondiscriminatory reason" for its actions. Id. The burden, however, is one of

production, and not persuasion. Id. If the defendant meets its burden, the

presumption of discrimination that arose from the *prima facie* case disappears, and

the complaining party has the burden of proving by a preponderance of the

evidence that the proffered reason is pretext for discrimination. Id. Pretext may be

shown by demonstrating that the proffered reason is not worthy of credence, see

id., or through the introduction of other circumstantial evidence of discrimination,

see Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004).

A.

It is undisputed that Plaintiffs have satisfied the first two elements of their

*prima facie* case. All four of the Plaintiffs are African-Americans and they each

entered into the Salisbury Waffle House with the intent of purchasing and

consuming breakfast.

The third and fourth elements require that Plaintiffs present evidence that

they were denied the right to contract for the services provided by the Salisbury

---

[11] Plaintiffs also seek injunctive relief under Title II of the Civil Rights Act of
1964 – 42 U.S.C.A. §§ 2000a, *et seq*. Because the inquiry for § 2000a claims
and § 1981 claims are substantially similar, see Slocumb, 365 F. Supp. 2d 1332,
and the parties have treated them as such in their briefs, the following analysis will
apply to both claims. Id. at 1342.

21

restaurant. This includes the "services ordinarily provided" and the services "that [were] otherwise afforded to white customers." <u>Williams</u>, 372 F.3d at 667-68. Here, Plaintiffs allege not only that they sought to contract for edible food, but also that they were denied the benefits of the general dining experience. <u>See</u> <u>Gilyard v. Northlake Foods, Inc.</u>, 367 F. Supp. 2d 1008, 1014 (E.D.Va. 2005) (finding "that the restaurant services involved . . . include . . . [the restaurant's] willingness to seat Plaintiffs, to take their order, and to fill it with edible food"); <u>Charity v. Denny's Inc.</u>, 1999 WL 544687, at *3 (E.D. La. July 26, 1999) (finding that restaurant contracts are for more than food and also include the dining experience). Plaintiffs have alleged that during their three visits to the Salisbury restaurant they were denied the right to be seated and to be waited on within a reasonable time period. <u>See</u> <u>Wilkins</u>, 2001 WL 1019698, at *9 ("[P]laintiffs herein have presented proof that they were never served meals within a time frame that *well exceeded* what an ordinary person would believe to be reasonable."). Additionally, Plaintiffs allege that they when they were permitted to place an order, during the 2002 visit, the sandwich received was inedible because it was filled with jalapeno peppers instead of eggs. <u>See</u> <u>Northlake</u>, 367 F. Supp. 2d at 1014-15 (upholding Plaintiffs' claim because although they were served, the grits received were fly infested and thus inedible).

Notwithstanding, Defendants claim that there were other African-American customers and employees in the Salisbury restaurant during Plaintiffs' visits.

22

However, the evidence viewed in the light most favorable to the Plaintiffs is that during only one of their three visits to the Salisbury restaurant another African-American customer was present. Additionally, Plaintiffs admission that this customer received service, does not defeat their *prima facie* case because they also claim that he was accompanied by a larger group that included white customers. Plaintiffs have thus shown that this other African-American customer was not "similarly situated" to the Plaintiffs. Finally, Plaintiffs' affidavits are clear that they did not see any African-American employees working at the Salisbury restaurant during any of their visits. Thus, taking the facts in the light most favorable to the Plaintiffs, they have provided sufficient evidence to create a material fact precluding summary judgment. See id. (denying summary judgment when plaintiffs submitted affidavits showing that other non-minority patrons that were seated at the same time received service and left well before plaintiffs were waited on and no other racial minorities were dining in the restaurant at the time).

B.

Because Plaintiffs have presented sufficient evidence on each of the elements of a prima facie case, the burden shifts to the Defendants to proffer a legitimate, nondiscriminatory reason for the treatment of Plaintiffs at the Salisbury restaurant. See Williams, 372 F.3d 668. To successfully rebut the presumption raised by the *prima facie* case, Defendants "must clearly set forth, through the introduction of admissible evidence, a legitimate, nondiscriminatory reason" for the

23

treatment of Plaintiffs.  Id.  Defendants here suggest that "the record is replete with legitimate, non-discriminatory reasons that Plaintiffs may have been refused service, or received slow service."  (Def. Freeway Food's Reply Br. at 5.)[12]  However, Defendants merely speculate as to the reasons that the events occurred and have produced no evidence that would support these speculations.[13]  See Wilkins, 2001 WL 1019698, at *10 (holding defendants failed to satisfy burden of legitimate nondiscriminatory reasons because they "produced no evidence that would support their speculation as to the reasons the questioned events occurred").  Additionally, Defendants have not even attempted to suggest

---

[12] Defendants point to the declarations of numerous employees of the Salisbury Waffle House who all made the same statement: "If someone feels that he or she has experienced slow service in the Salisbury restaurant, there are lots of possible explanations.  First, the restaurant may be crowded and busy.  Second, the shift may have changed while the customers were having their meal, and there might be confusion about whether the customer is waiting to be served, or if the customer already has finished his or her meal.  Third, the waiter or waitress who is serving a customer may be inexperienced, and slow to provide service, particularly if he or she is simultaneously serving a number of customers.  Fourth, the customer may have ordered a meal that takes longer to prepare than other customer's orders.  These are just some examples."  (Def. Freeway Food's Reply Br. at 5.)

[13] Defendants claim that their failure to provide more evidence is due to the delay between the events and their notice of a potential claim.  Although the Court is sympathetic to Defendants' difficulty in now reconstructing what may have happened at specific moments on specific days years ago in a business serving interstate travelers and in a setting where employees might often come and go, it does not change the fact that Defendants' failed to meet their requisite burden.  See Wilkins, 2001 WL 1019698, at *10 (finding defendants had not met their burden even though they argued that "the delay between the event and when they became aware of a potential claim made that day's events fade quickly in the institutional memory of a busy restaurant").

legitimate, nondiscriminatory reasons for the rudeness of the waitress who Plaintiffs claim slammed the pot of coffee on the counter without pouring it, or the inedible egg sandwich which was allegedly filled with jalapeno peppers.  Thus, Defendants have failed to satisfy their burden to show legitimate nondiscriminatory reasons for the treatment of the Plaintiffs in the Salisbury Waffle House.

Because Defendants have not met their burden to put forth a legitimate nondiscriminatory reason for the treatment of Plaintiffs there is no need to go beyond this stage of the paradigm.  Summary judgment will not be granted on Plaintiffs discrimination claims.

VIII.

Defendants also claim that even if Plaintiffs' discrimination claim survives summary judgment, they are not entitled to punitive damages.  Under § 1981 punitive damages are only available where a plaintiff demonstrates that the defendant's conduct was prompted by "malice or with reckless indifference to the federally protected rights" of the plaintiff.  42 U.S.C. § 1981 (a) (b)(1); see also Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118 (1999); Wilkins, 2001 WL 1019698, at *11.  Additionally, an employer may not be held liable for a server's misconduct unless the plaintiff produces evidence that the management ratified or approved of the discriminatory acts of the server.  Slocumb, 365 F. Supp. 2d at 1341-42.  Specifically, Plaintiffs must show that (1) the defendant authorized or ratified the doing and manner of the act; (2) the defendant was

25

reckless in employing the agent who committed the act; or (3) the agent who committed the act was employed in a managerial capacity in the scope of her employment. See Wilkins, 2001 WL 1019698, at *12 (noting Fourth Circuit's adoption of standards set forth in Restatement (Second) of Torts § 909 (1979)).

Plaintiffs here have failed to produce sufficient evidence to satisfy any of these requirements. First, it is undisputed that neither Freeway Foods nor Waffle House were aware of Plaintiffs' claims before Plaintiffs filed this lawsuit in 2004. (Ms. Willis Dep. at 43.) Although Plaintiffs were given a customer service number by an employee during their first visit, they admit that after trying several times and receiving no answer, they took no additional action to report the 2000 incident or any of the subsequent incidents at the Salisbury Waffle House. Cf. Slocumb, 365 F. Supp. 2d at 1341-42 (holding that plaintiffs evidence, although "thin at best" survived summary judgment, when plaintiffs claimed that they alerted management by calling the corporate office, and that the employer failed to properly investigate plaintiffs' claim of discrimination). Plaintiffs also speculate that because Ms. Willis stood to ask for service, any manager in the restaurant would have been aware of the situation. However, there is no evidence that any employee of the Salisbury restaurant that was acting in a managerial capacity - either as a trained manager, or a line cook assuming the managing position - was

26

aware of the situation between Plaintiffs and any employee of the restaurant.[14]

Plaintiffs simply have put forth no evidence showing that Freeway Foods or an employee of Freeway Foods acting in a managerial capacity, was reckless or acted with malice at the time of these incidents.  See Wilkins, 2001 WL 1019698, at *12 (dismissing claim for punitive damages when there is no evidence that defendant had knowledge of any malice or reckless conduct by employee or authorized, ratified or approved of employee's actions).  Thus, Plaintiffs' claim for punitive damages against Freeway Foods and Waffle House is dismissed.

## IX.

Defendants argue that Plaintiffs are not entitled to injunctive relief under § 2000a because they have not shown a real or immediate threat that they will be wronged again.[15]  Plaintiffs, however, have provided evidence that they returned to the Salisbury restaurant three times and each time were discriminated against. This is a very different situation than in Harrison v. Denny's Restaurant, Inc., 1997

---

[14] Defendants reliance on Sherman v. Kasotakis, 314 F. Supp. 2d 843, 860-63 (N.D. Iowa 2004), is also misplaced.  Although that district court refused to find a distinction between supervisor and manager for purposes of vicarious liability for punitive damages, there was no question in that case that the supervisor/manager present at the time was aware of the situation and even offered the plaintiffs a free meal to make up for the discriminatory treatment.  In the present case, however, there is no evidence that whomever the manager was at that Salisbury restaurant had any notice of the alleged discriminatory treatment.

[15] The right of access to public accommodations as defined in § 2000a is enforced exclusively by injunction and declaratory relief.  See Gennell v. Denny's Corp., 378 F. Supp. 2d 551, 556 (D. Md. 2005) (citing Newman v. Piggie Park Ent., Inc., 390 U.S. 400, 88 S.Ct. 964 (1968)).

27

WL 227963, at *4 (N.D. Cal. April 24,1997), which is relied on by the Defendants. However, in <u>Harrison</u>, the plaintiff was a regular customer at that same restaurant for at least 20 years prior to the incident and had never had a problem. <u>Id.</u> at *4 n.7. Here, according to the Plaintiffs, they were never properly served at the Salisbury restaurant. The Plaintiffs regularly eat at Waffle House restaurants and given the difficulty they have in identifying which restaurants are owned by Freeway Foods, Plaintiffs claim it is likely they would be subject to the same discrimination again. Thus, Plaintiffs' claims for injunctive relief under § 2000a will not be dismissed at this stage in this case. <u>See</u> <u>Eddy</u>, 335 F. Supp. 2d at, 701-02 (holding plaintiffs maintained a cognizable claim under § 2000a when the alleged discrimination by employee of the restaurant based on race).

X.

For the reasons set for above, Defendants' Motions for Summary Judgment will be GRANTED in part and DENIED in part.

This the day of December 22, 2005

   /s/ N. Carlton Tilley, Jr.  <br>
United States District Judge